Nott, J.,
delivered tbe opinion of tbe court:
Tbe question in this case is whether it comes within tbe *319 decision in Hayward (30 C. Cls. R., 219) or within the decision in Pumpelly v. Green Bay Company (13 Wall. R., 166).
In the former case the act assigned as the taking' of the claimant’s land was not so much what tbe Government did as what it neglected to do. The land was overflowed, washed away, and, for practical purposes, destroyed. Thecause alleged was the faulty construction of a dam. The effect of this faulty construction was a catastrophe — the breaking of the dam during a freshet. The washing away of all that made the land valuable in a single hour caused the destruction; and there was no actual or constructive user of the claimant’s property by the Government for any purpose whatever.
In the case of Pumpelly v. Green Bay Company, a permanent dam had been erected. The report of the case does not set forth the declaration by which the facts were presented to the Supreme Court; and it is not altogether clear what those facts were. This much, however, is stated by the reporter, The declaration averred the waters of the lake were raised so high as to forcibly and with violence overflow all his said land, from the time of the completion of the dam, in 1861, to the commencement of this suit; the water coming with such a violence as to tear up Ms trees and grass by the roots and wash them, with Ms hay by tons, aivay, to choice up Ms drains and Jill up Ms ditches, to saturate some of Ms lands with water, and to dirty and injure other parts by bringing and leaving on them deposits of sand, and othenvise greatly injuring Mm.'” It also appears, in the opinion of the court, that the declaration states that by reason of the dam the water of the lake was so raised as to cause it to overflow all his land, and that the overflow remained continuously from the completion of the dam in the year 1861 to the commencement of the suit in the year 1867.” The court adds that “ the nature of the injuries set out in the declaration are such as to show that it ivorlced an almost complete destruction of the value of the land.”
A continuous overflow of the land and “an almost complete destruction of the value of the land” seem to be the two important facts upon which the Supreme Court rested its decision that there had been a taking of private property for public purposes within the intent and meaning of the Constitution.
In the present case the facts are also presented by the *320 pleadings. The petition, Avhich is confessed by demurrer,, alleges that in the year 1883 the officers of the United States,, in pursuance of the act of Congress creating the Mississippi Biver Commission, projected a system of public works for the-purpose of so confining the waters of the river between lines, of embankments or levees as to give increased elevation and velocity and force to the current, and have thus caused an increased and abnormal elevation in the waters of the river at the high water or flood stage. The petition also alleges that the effect of these public works is to' — “ Cause the plantations of petitioners, and others so situated, to he flooded annually by the waters of the river, and to destroy the crops groicing and grown-thereon, and to drown the live stock, and to undermine and wash awcvy the buildings, fences, and other improvements, and to fill up the drains and ditches, and to wash off the soil, and to cover the lands with sand and gravel, and to render them unfit for cultivation, and to entirely destroy their value.
“That in pursuance of the said plan for the improvement of the navigation of the river, the said officers and agents of the United States have undertaken to close the Atchafalaya Biver, a natural outlet carrying off near oue-third of the surplus-waters of the Mississippi, and to force the waters of the Red River and its tributaries from their natural course, through the Atchafalaya River to the Gulf of Mexico, into the channel of the Mississippi River, and have so obstructed and aro sd obstructing the passage of the surplus waters through the Atchafalaya as to cause the waters of the rivers at the flood stage to annually back up and overflow the lands of petitioners,, and to destroy the crops growing and grown thereon, and to deposit thereon superinduced additions of water, earth, sand, and gravel, so far as to render them unfit for cultivation and to entirely destroy their value.”
The material difference between this case and that of Pumpelly v. Green Bay Company is, that here the overflow of the water was not continuous. But. the essential fact is-averred that the annual overflow of the claimant’s lands in consequence of the Government’s works is such as “ to render them unfit for cultivation and to entirely destroy their value.”’ In that essential this case is stronger than the other, for Mr. Justice Miller says that the facts averred are such as to show that the dam and consequent overflow “ worked an almost complete destruction of the value of the land.”
It is true that here the claimant is free to go upon his laud during the nonagricultural portions of the year; that is to say, after the spring and summer floods have passed away. But *321 so was tbe plaintiff, in tlie other case, free to go upon Ms land while it was overflowed and do what he could with it. It is not an absolute taking- of land which constitutes a taking of private property for public use. Mr. Justice Miller, quoting Angel on Water Courses and stating apparently the conclusion of the court, says that “ there are numerous authorities to sustain the doctrine that a serious interruption to the common and necessary use of property may be equivalent to the taking of it, and that under the constitutional provision it is not necessary that the land should be absolutely taken.”
The petition undoubtedly sets up losses which are in the nature of consequential damages, of which the court has not jurisdiction. The Government may have increased the effect of the flood wrongfully or rightfully by the erection of its levees; but it did not in the constitutional sense of the term take the claimant’s cotton, mules, corn, cattle, and sheep for public use. Such a claim is not founded on au implied contract, and of it the court has not jurisdiction. But the petition does allege that “ the value of the land and the improvements destroyed was $60,000;” and that taking is presented by allegations so closely resembling those in the Pumpelly v. Green Bay Company Case that this court does not feel at liberty to say that they present no valid cause of action.
The judgment of the court is that the defendants’ demurrer to the petition be overruled, with leave to the defendants to answer within thirty days.